# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| REX REAL ESTATE I, L.P. | § | |
| | § | Civil Action No. 4:18-cv-371-ALM |
| v. | § | Judge Mazzant |
| | § | |
| REX REAL ESTATE EXCHANGE, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Rex Real Estate Exchange, Inc. has filed a Motion to Dismiss or Transfer for Improper Venue (the "Motion to Dismiss or Transfer") (Dkt. #15) and a Motion for Hearing on the Motion to Dismiss or Transfer (Dkt. #32). After careful consideration, the Court concludes that the Motion to Dismiss or Transfer will be granted to the extent described herein, rendering the request for a hearing moot.

## BACKGROUND

Plaintiff Rex Real Estate I, L.P. and Defendant Rex Real Estate Exchange, Inc. are real estate companies that conduct business in Texas. Plaintiff conducts business throughout the state, though primarily focuses on North Texas. Defendant, on the other hand, primarily operates in Austin, San Antonio, and Houston, though also operates in cities outside of Texas (Defendant's "Service Areas"). Plaintiff alleges that Defendant uses Plaintiff's "unique and proprietary trademarks, service marks and tradenames 'REX' and 'REX REAL ESTATE'" in attempts to market to and solicit customers (Dkt. #1 at pp. 2–3).

Defendant's website (the "Website") "allows sellers to list residential homes for sale and allows potential buyers to browse the homes that are listed" (Dkt. #15, Exhibit 2 at p. 2). Although the Website is accessible from any location, "[i]f a user tries to list a home [outside of its Services Areas] for sale," the Website "reject[s] the user's attempt" to do so (Dkt. #15, Exhibit 2).

Defendant's Website will assist those outside its Service Areas to purchase a home in those areas, but no resident in the District has purchased a home through the Website (Dkt. #15, Exhibit 2).

Defendant now seeks to either dismiss the action, or transfer it the Western District of Texas, Austin Division, arguing that it lacks any meaningful ties to the District. Defendant notes that it does not have a physical office in the District, does not employ District residents, and runs ads in newspapers and on radio stations in Austin and San Antonio—even if Eastern District residents may be exposed to some advertisements due to the reach of some of those media outlets.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

**DISCUSSION**

Defendant moves to dismiss the case or transfer it to the Western District of Texas, arguing that venue is improper under 28 U.S.C. § 1391. Section 1391(b) allows civil actions to be brought in either:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Plaintiff has failed to establish that this District is proper under any of these prongs—even accepting its allegations as true and resolving all factual disputes in its favor.

## I. Judicial District in Which Any Defendant Resides

Defendant insists that it does not reside in this District for venue purposes, and the Court agrees. Section 1391 generally provides that entities that can sue or be sued "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction." *Id.* § 1391(c). But Section 1391 adds a wrinkle if the defendant is a corporation sued in a State with more than one judicial district, as is the case here. *See id.* § 1391(d). In those circumstances, "such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction *if that district were a separate state*." *Id.* And, if no such district exists, "the corporation shall be deemed to reside in the district within which it has the most significant contacts." *Id.*

Defendant has more significant contacts to other districts, as discussed in more detail below. *See infra* at Part III (explaining why this action could have been brought in the Western

3

District of Texas since a substantial part of the events giving rise to the claim occurred there). Section 1391(b)(1) thus establishes venue in this District only if the Court could exercise personal jurisdiction over Defendant if the District were a distinct state.

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

Plaintiff does not contend that the District could exercise general jurisdiction over Defendant. The question, then, is simply whether the District can exercise specific jurisdiction. Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros Nacionales de*

4

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."  *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions."  *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)).  Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."  *Id*.

Plaintiff's claims are based on allegations that Defendant used the Disputed Marks while advertising and soliciting potential customers for the purchase and sale of Defendant's real estate products and services.  Accordingly, the Court considers Defendant's contacts to the District only if those contacts arise from Defendant's advertising and solicitation efforts.  *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that *arise out of different forum contacts* of the defendant must establish specific jurisdiction for each claim.") (emphasis added).  Plaintiff insists that these efforts make Defendant subject to suit here since Defendant reaches District residents through (a) its Website, (b) its radio and print ads, and (c) its communications with those residents.  The Court is not convinced.

### a. The Website

Attempts to establish personal jurisdiction through a defendant's online presence are, at their "'most basic level,'" indistinguishable from the analysis used to evaluate any other basis for jurisdiction. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 (5th Cir. 2012) (quoting 4A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1073.1, at 322 (3d ed. 2002)) (Dennis, J.). Accordingly, when determining the extent to which a website is a suit related contact that would subject a defendant to suit, "'[w]ebsite interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits and privileges of the forum state.'" *Id.* (quoting *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 813 (D. Md. 2004)).

In this case, Defendant's Website allows users to list homes for sale and uses an algorithm to help potential buyers discover homes they may be interested in purchasing. Although the Website is universally accessible, the Website's interactive features do not seem to be designed for District residents to use. Users are permitted to list a house for sale *only* if the house is in Defendant's Service Areas, which does not include the Eastern District of Texas. Accordingly, to the extent the Website is helping users identify potential houses to purchase, it can do so only if the user is looking to purchase a house in one of Defendant's Service Areas. Unsurprisingly, District residents have not used the Website to either purchase or sell a home (Dkt. #15, Exhibit 2 at pp. 3–4).

Plaintiff insists that the Website constitutes a purposeful contact with the District, nevertheless. It notes that the Website invites those outside its Service Areas to secure a referral for an agent through Defendant. But Plaintiff has not alleged in its Complaint or provided evidence

indicating that Defendant used the Website to consciously form any commercial relationship with a District resident. To the contrary, Defendant submits evidence indicating that its referral program has not led to a single referral relationship with a District resident (Dkt. #24, Exhibit 1). The most the Court can conclude, then, is that Defendant would be *open to* using its Website to refer an agent to a resident in the District—not that Defendant used its webpage to target District residents. *See NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378–79 (Fed. Cir. 2017) ("While a Kansas resident *could* purchase ZebraZapps from Allen's website, what is missing is any evidence that such a sale has taken place . . . . There is no evidence that Allen's website facilitated the making, using, offering, or selling of ZebraZapps in Kansas in order to connect Allen's website with NexLearn's patent infringement claim.") (emphasis in original). In short, the Website targets users *outside the District*, making any contacts to the District derived from the website inconsequential for purposes of jurisdiction. *See Pervasive Software*, 688 F.3d at 227 (finding personal jurisdiction lacking where "Lexware's actions of making its German tax and financial software internet-accessible were not purposely directed toward Texas or purposely availing of the privilege of conducting activities in Texas" even though—unlike this case—there was evidence that a few Texas residents actually purchased the product in question on Defendant's website).

  b. **The Print and Radio Ads**

Plaintiff's reliance on Defendant's print and radio advertisements fairs no better. Defendant operates in Austin, Houston, and San Antonio, as well as in cities outside the state. As might be expected, the record reflects Defendant places advertisements in newspapers and on radio stations based in those markets.

Plaintiff insists that Defendant's ads reach the District nevertheless, citing a statement from one District resident who claims to have seen Defendant's advertisement, as well as a map

indicating that cities in the District receive "distant" or "fringe" signals from one radio station where Defendant buys ads (Dkt. #23, Exhibit 10). But Defendants cannot control how widely an ad in a newspaper or on a radio station based in Austin, San Antonio, or Houston may reach, and Plaintiff presents no evidence suggesting that Defendants intended to target District residents through ads printed in non-local papers or played across "distant" or "fringe" radio signals. Accordingly, the fact that an ad may reach areas *Defendant does not serve*, including this District, appears to be a fortuitous and attenuated contact—not a purposeful one that would make it fair to subject Defendant to suit in this Court. *See Pervasive Software*, 688 F.3d at 228 (finding no personal jurisdiction where the defendant "solicits no business . . . through advertising *targeted specifically* to Texas") (emphasis added); *NexLearn*, 859 F.3d at 1379 ("Something more is needed—whether it be actual sales, *targeted* advertising, or contractual relationships.") (emphasis added). Defendant's advertising campaigns do not establish specific jurisdiction as a result. *See United States Auto. Ass'n v. New Day Fin., LLC*, No. SA-17-CV-759-OLG, 2018 WL 1899807, at *2 (W.D. Tex. March 8, 2018), *adopted by*, 2018 WL 1905113 (finding that a national advertising buy did not make the defendant subject to specific jurisdiction where "the loans that are the subject of New Day's advertisements were never made available in Texas"); *Frieling v. Malowest, Inc.*, 814 F. Supp. 75, 76 (D. Okla. 1993) ("Plaintiff relies on the fact that Malowest advertises on Texas radio stations which, because of Wichita Falls' close proximity to Oklahoma, spill over into Oklahoma . . . The court does not agree, however, and finds that any advertising spill over is simply the result of contacts which are fortuitous and attenuated.").

    c. **Defendant's Communications to District Residents**

Plaintiff argues that Defendant has directed its contact to the District by engaging in 240 communications with individuals in the District concerning its services. The Court disagrees for

several reasons. First, the record reflects that "Defendant . . . has been *contacted by* approximately 240 [District residents]" (Dkt. #23, Exhibit 6 at p. 6) (emphasis added)—not that Defendant purposely reached out to them. This an important distinction since, as stated, Defendant does not target its advertising toward the District. *See Pervasive Software*, 688 F.3d at 228 (dismissing "coincidental[]" contacts with a few Texas residents who "happen[ed] to access [a website] from Texas"). Second, Defendant informs these District residents that it *cannot* help them list a home as they reside outside of Defendant's Service Areas (Dkt. #23, Exhibit 6 at p. 6; Dkt. #23, Exhibit 11 at p. 2). This is hardly the type of communication that signals purposeful contact with the forum. And third, these communications make up less than 1% of Defendant's total communications (Dkt. #23, Exhibit 7 at p. 2), and did not result in any commercial relationship between the residents and Defendant (Dkt. #15, Exhibit 2 at p. 4; Dkt. #24, Exhibit 1 at p. 3). This suggests that these contacts were isolated incidents rather than the result of purposeful outreach. *See id.* (dismissing "isolated incidents" in which Texas residents actually purchased products on Defendant's Website since they do not show purposeful availment).

Plaintiff notes that, in at least one communication, Defendant references plans to move to Dallas by the end of 2019. But Dallas is part of the Northern District of Texas, not this one. Regardless, the Court must decide the motion based on the facts that were true at the time the case was filed, not potential events that may not happen. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990) ("[T]he relevant time for determining jurisdiction of the filing of the complaint."); *Garnet Digital, LLC v. Apple, Inc.*, 893 F.Supp.2d 814, 816 (E.D. Tex. 2012) (rejecting the argument that Defendant's 300 customers in the district reflected a meaningful contact since that represented 0.05% of the defendant's customers nationwide). The District lacks

personal jurisdiction over this case as a result—at least for purposes of establishing proper venue under 28 U.S.C. § 1391(b)(1).

## II. Substantial Part of Events or Omissions Where the Claim Occurred

A substantial part of the events or omissions giving rise to these claims did not occur in the District either. In addressing venue in trademark disputes under section 1391(b)(2), courts consider several factors, including whether the allegedly infringing activity took place in the district, "whether confusion to consumers is likely to occur in the district, whether sales occur there, and whether the defendant actively targeted the district for advertising or other sales-related purposes." *Francesca's Collections, Inc. v. Medina,* No. H-11-307, 2011 WL 3925062, at *1 (S.D. Tex. Sept. 7, 2011).[1] Defendant does not list or sell houses based in the District (Factor Nos. 1 & 3), nor does it target its marketing in the District (Factor No. 4). As a result, to the extent consumers are confused by Defendant's use of the Disputed Marks, the confusion is unlikely to occur here. *See Hopdoddy Burger Bar Inc. v. Blacketer*, No. 1-15-CV-233 RP, 2015 WL 4624644, at *2 (W.D. Tex. July 31, 2015) ("It is undisputed that the allegedly infringing restaurant operations are located in Tulsa, Oklahoma. The 'passing off' and consequent deception of consumers thus occurs there."). This is apparent from *Plaintiff's* evidence. Plaintiff submitted an affidavit identifying anecdotes in which individuals expressed confusion between Plaintiff and Defendant's businesses. While many of these individuals reside in Austin or San Antonio, none appear to reside in the Eastern District (Dkt. #23, Exhibit 1 at pp. 3–7). As a result, the Court cannot find that a substantial portion of events or omissions giving rise to this suit took place in the District.

---

[1] *See also Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (focusing on where advertising or sales of the infringing advertisement occurred in a trademark infringement case, rather than the plaintiff's place of residence, since "by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not the plaintiff").

10

## III. The Fallback Provision

The Motion to Dismiss or Transfer thus turns on whether venue is proper under 28 U.S.C. § 1391(b)(3). Section 1391(b)(3) provides that:

> [I]f there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(3). This means, if there is another district in which this action could be brought under either § 1391(b)(1) or § 1391 (b)(2), venue does not exist in this District—even if it could exercise personal jurisdiction over a defendant. *See Rhymes v. Ethicon, Inc.*, No. 2:12-cv-669, 2013 WL 12155244, at *2 (E.D. Tex. May 9, 2013) (Gilstrap, J.) ("Rhymes relies only on § 1391(b)(3) to establish proper venue and contends that '[v]enue of this suit is proper [as Ethicon] is a foreign corporation who does business and derives substantial profit from the Eastern District of the State of Texas.' (Dkt. No. 1, p.2.). Subsection three, however, applies only where 'there is no district in which an action may otherwise be brought as provided in this section.' 28 U.S.C. § 1391(b)(3). The Court finds that the abovestyled action could have been brought in the Northern District of Texas because a substantial part of the events giving rise to the claim occurred there and Ethicon is subject to personal jurisdiction there . . . . Accordingly, the Court finds that venue is not proper in the Eastern District of Texas."); *accord Flores v. TDCJ Transitorial Planning Depart. S. Region Inst. Div.*, No. 2:14-CV-283, 2015 WL 5554630, at *4 (S.D. Tex. Sept. 21, 2015); *Holdridge v. TricorBraun Inc.* No. 3:13-cv-1202-L, 2013 WL 3213318, at *4 (N.D. Tex. June 26, 2013) (Lindsay, J.).[2]

---

[2] *See also* 14D Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 3506.1 (4th ed. 2019) ("Many plaintiffs have seized on this broad provision of venue—requiring only that 'any defendant' be subject to the forum district's personal jurisdiction—and attempted to use Section 1391(b)(3) as an alternative to Sections 1391(b)(1) and (b)(2). These plaintiffs make a fundamental error. Section 1391(b)(3) is not an alternative to the other two. Section 1391(b)(3) applies only if there is no federal district that will satisfy either the residential venue or transaction venue provisions. It is not enough that the forum district does not satisfy residential or transaction venue. There must be no federal district *anywhere in the United States* that satisfies either Section 1391(b)(1) or Section 1391(b)(2).")

Plaintiff cannot establish venue under this section since there is a district in which this action could have been brought under Section 1391: the Western District of Texas. As stated, Section 1391(b)(2) establishes venue in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Defendant operates in the Western District and targets its advertising there, making that the place where Defendant (allegedly) infringed on Plaintiff's trademarks. As a result, the Western District is also where confusion is likely to result—as reflected in Plaintiff's affidavit which lists anecdotes of confusion between Plaintiff and Defendant's brands from consumers in Austin and San Antonio. A substantial part of the events giving rise to this action occurred in the Western District as a result. *See Hopdoddy Burger Bar Inc.*, 2015 WL 4624644, at *2 (citing *Cottman v. Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995); *Tefal, S.A. v. Prods. Int'l Co.*, 529 F.2d 495, 496 n.1 (3d Cir. 1976); *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014)) ("Courts uniformly agree [that a] proper venue for a trademark infringement case lies where the infringing activity, or the 'passing off' occurred.").

Because venue is not proper in this District, the Court must either dismiss Plaintiff's suit or transfer it to a judicial district in which venue is proper. 28 U.S.C. § 1406(a). Neither Party has weighed in on whether it would prefer a dismissal or a transfer if venue is found to be lacking. Rather than cause further delay in the resolution of this dispute, the Court finds that it would be in the interest of justice to transfer the action to the Western District of Texas—a district where this

---

(emphasis in original) (citing *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 n.10 (10th Cir. 2010); *Farmer v. Levenson*, 79 F. App'x 918, 920 (7th Cir. 2003), among other cases).

case may have been brought, *see infra* at Part III, and that might be more convenient for the Parties anyway.³

## CONCLUSION

Defendant Rex Real Estate Exchange, Inc.'s Motion to Dismiss or Transfer for Improper Venue (Dkt. #15) is **GRANTED** to the extent described herein, and Defendant's Motion for Hearing on the Motion to Dismiss or Transfer (Dkt. #32) is **DENIED AS MOOT**. Accordingly, the case is hereby **TRANSFERRED** to the Western District of Texas, Austin Division.

**IT IS SO ORDERED.**

**SIGNED this 19th day of June, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

³ Defendant alternatively moved to transfer the case to the Western District of Texas under 28 U.S.C. § 1406(a). Because the case should be transferred for improper venue, the Court does not address the merits of this motion.